IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Norma J. Childers,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>    Defendant. | Civil Action No. 6:11-3118-CMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

    This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

    The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

    The plaintiff filed an application for disability insurance benefits ("DIB") on April 14, 2009, alleging that she became unable to work on January 1, 2008. The application was denied initially and on reconsideration by the Social Security Administration. On July 22, 2010, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and G. Roy Sumpter, an impartial vocational expert, appeared on April 4, 2011, considered the case *de novo*, and on May 18, 2011, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on September 15, 2011. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> 1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of January 1, 2008, through her date last insured of December 31, 2009 (20 C.F.R. § 404.1571 *et seq.*)
>
> 3. Through the date last insured, the claimant had the following severe impairments: lumbar degenerative disc disease and obesity (20 C.F.R. § 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that, through the date last insured, the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except she is limited to occasional crouching, crawling, and climbing ladders. She should not be required to climb ropes or scaffolds.
>
> 6. Through the date last insured, the claimant was capable of performing her past relevant work as a sewing machine operator and stamp inspector. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565).

> 7. The claimant was not under a disability, as defined in the Social Security Act, from January 1, 2008, the alleged onset date, through December 31, 2009, the date last insured (20 C.F.R. § 404.1520(f))

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually

3

performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his

4

conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### **EVIDENCE PRESENTED**

The plaintiff alleges disability commencing January 1, 2008 (Tr. 39), due to several conditions, including lower back pain, fibromyalgia, and anxiety (Tr. 33-34, 142, 172). At the time of the hearing before the ALJ, she was 56 years old, with a ninth grade education. She has past relevant work experience as an assembler, inspector, nurse's aid, press operator, and sewing machine operator.

After the alleged onset of disability, the plaintiff described caring for herself, preparing simple meals, washing dishes, and laundering clothes (Tr. 191). The plaintiff could go shopping, pay her own bills, and attend church. However, she said that pain limited her activities (Tr. 192-95). The plaintiff said she could lift around 20 pounds but that bending, standing, walking, or kneeling caused her increased back pain (Tr. 196).

In June 2007, before the alleged onset of disability, the plaintiff sought treatment for back pain. She described generalized soreness over the last two to three months, with no acute, recent trauma. The plaintiff was given pain medications and told to follow up as needed (Tr. 332).

The plaintiff sought treatment from Todd Gallman, M.D. In October 2007, Dr. Gallman noted complaints of chronic pain and being tender "all over." There was no specific weakness or numbness on examination, and a straight leg raise test was negative. The plaintiff had good reflexes and strength. Dr. Gallman diagnosed the plaintiff with obesity, chronic lower back pain, and fibromyalgia. He prescribed the anti-convulsant medication Lyrica (Tr. 337-38).

In June 2009, the plaintiff returned to Dr. Gallman complaining of worsened pain in her right arm. The doctor noted that the plaintiff had not been seen in a year. The

5

plaintiff weighed 251 pounds. Dr. Gallman found good range of motion in the plaintiff's neck and shoulder, and she appeared well and "pretty comfortable." However, he found that the plaintiff complained of tenderness when touched on the right side of her neck, her right shoulder, and lower back. Dr. Gallman gave the plaintiff a pain medication, Ultram, and increased her prescription for the antidepressant Cymbalta (Tr. 335).

In July 2009, Dr. Gallman gave a report concerning any mental limitations that the plaintiff may suffer. He stated that the plaintiff was diagnosed with depression and panic attacks, but that medications helped this condition and that psychiatric care had not been recommended. Although the plaintiff's mood was depressed or anxious, she had adequate mental functioning and was fully oriented. Dr. Gallman indicated that the plaintiff experienced only "slight" limitation due to any mental conditions (Tr. 334).

The State Disability Determination Services sent the plaintiff to a consultative examination. W. Russell Rowland, M.D., saw the plaintiff in August 2009. Dr. Rowland reviewed x-rays of the plaintiff's lower back, her diagnoses of fibromyalgia and obesity, and interviewed the plaintiff regarding her symptoms (*See* Tr. 348-49). The plaintiff said she did not do yard work, but she cooked some, drove a car, infrequently swept, and vacuumed (Tr. 349). On examination, Dr. Rowland found good range of motion and only limited areas of "mild" tenderness in the plaintiff's shoulders and knees, but not elsewhere (Tr. 350). The plaintiff had a normal neurological examination. Dr. Rowland acknowledged the plaintiff's lower back pain, but expressly declined to diagnose fibromyalgia. He wrote that he was "unable to make a clinical diagnosis of fibromyalgia on physical examination because she does not meet the criteria on exam." Dr. Rowland encouraged the plaintiff to become more active and try water aerobics (Tr. 351).

The plaintiff returned to Dr. Gallman in October 2009. She complained of increasing pain over the last two weeks. The plaintiff's neck was "a little" tender, her right trapezius muscle was tender, and there was "vague" tenderness in the right arm. The

plaintiff continued to show good range of motion without any impingement (Tr. 384). During a later visit in April 2010, Dr. Gallman noted tender points over much of the plaintiff's body, "less so" over the mid back, but did not note the number of tender points he was discussing (Tr. 382).

Dr. Gallman completed a second report concerning the plaintiff's ability to work in April 2010. Dr. Gallman indicated that the plaintiff's pain and other symptoms caused severe work related limitations; for instance, she would miss more than four days of work per month, and she could walk no more than one block without resting (Tr. 377-78).

In June 2010, Dr. Gallman noted that the plaintiff had found significant improvement in her pain levels. However, she complained of increased anxiety, and Dr. Gallman adjusted her medications. The plaintiff also complained of shortness of breath on exertion, and Dr. Gallman stated that this was "probably related to obesity, sedentary lifestyle, and multiple medical problems" (Tr. 381).

Before the administrative hearing, the plaintiff's representative submitted a pre-hearing brief to the ALJ. The representative did not allege that the plaintiff met or equaled any listed impairment (Tr. 237).

At the April 2011 hearing, the plaintiff testified that she injured her back initially when working as a nurse's aide in 2004 (Tr. 41). She was 5'6" tall and weighed 246 pounds (Tr. 35). The plaintiff described significant limitations in her daily activities, stating that she only entered her mobile home through the back door and not the front door, which had more steps. The plaintiff also said that she only drove to a store ten minutes from her house and that her husband drove her other places, such as appointments or church (Tr. 36). The plaintiff said that her back pain was a nine on a scale of zero to 10, and her husband did the chores and grocery shopping (Tr. 47). The plaintiff denied sweeping or vacuuming (Tr. 48). The plaintiff indicated that she could read a newspaper and did not

7

have trouble with any of the vocabulary. However, she had been in special education classes while in school (Tr. 44).

## ANALYSIS

The plaintiff was 52 years old on her alleged disability onset date and was 56 years old as of the date of the ALJ's decision. The ALJ found that she had the following severe impairments: lumbar degenerative disc disease and obesity. He further determined that the plaintiff had the residual functional capacity ("RFC") to perform light work except she is limited to occasional crouching, crawling, and climbing ladders, and she should not be required to climb ropes or scaffolds. The ALJ determined the plaintiff could perform her past relevant work as a sewing machine operator and stamp inspector. The plaintiff argues that the ALJ erred by (1) failing to consider her obesity as required by Social Security Ruling ("SSR") 02-1p; (2) failing to properly consider the opinion of Dr. Gallman, her treating physician; and (3) failing to properly consider her credibility.

*Obesity*

The plaintiff argues that the ALJ failed to properly consider her obesity as required by SSR 02-1p. SSR 02–1p defines obesity as a "complex, chronic disease characterized by excessive accumulation of body fat." 2000 WL 628049, at *2. The Ruling recognizes obesity can cause limitations in all exertional and postural functions. *Id*. at *6. It recognizes that obesity makes it harder for the chest and lungs to expand. Obesity forces the respiratory system to work harder to provide oxygen to the body, in turn making the heart work harder to pump blood and carry oxygen to the body. *Id.* at *5. The ruling recognizes obesity can increase the severity of coexisting or related impairments, including musculoskeletal disorders. *Id*. The ALJ should consider a claimant's obesity in making a number of determinations, including whether the individual has a medically determinable impairment, the severity of the impairment, whether the impairment meets or equals the

8

requirements of a listed impairment, and whether the impairment prevents the claimant from doing his past relevant work or other work in the national economy. *Id*. at *3.

At step two of the sequential evaluation process, the ALJ found that the plaintiff's obesity was a severe impairment (Tr. 16). At step three, the ALJ stated:

> I evaluated the claimant's obesity in accordance with Social Security Ruling 02-1p. The medical evidence does not show that the claimant's obesity, in itself, is disabling. However, it contributes to the claimant's back pain and postural limitations.

(Tr. 18). In determining the plaintiff's residual functional capacity ("RFC"), the ALJ evaluated opinions from both Dr. Gallman and Dr. Rowland in assessing the plaintiff's obesity. The ALJ acknowledged evidence indicating that the plaintiff's obesity likely caused some shortness of breath with exertion: "Dr. Gallman's opinion indicating that the claimant's dyspnea on exertion is related to obesity and her sedentary lifestyle is consistent with the consulting physician's opinion that the claimant's obesity and inactivity contribute to her symptoms" (Tr. 20). The ALJ further found specific limitations due to the plaintiff's obesity: "I further find that the claimant is limited to occasional crouching, crawling, and climbing ladders due to the combination of her back impairment and obesity. She must never climb ropes or scaffolds due to balance difficulties resulting from obesity" (Tr. 21).

This court finds that the ALJ appropriately considered the plaintiff's obesity at each step of the sequential evaluation process as required by SSR 02-1p and properly accounted for any effects of obesity in the written decision. Moreover, as argued by the Commissioner, the plaintiff failed to point to any medical evidence suggesting that her obesity caused greater limitations than those accounted for by the ALJ. *See Gassaway v. Astrue*, No. 8:07-4083, 2009 WL 462704, at *10 (D.S.C. Feb. 23, 2009) (finding no error in the ALJ's assessment of the effect of obesity in combination with claimant's other impairments where claimant offered no argument as to what limitations she would

experience as a result of her obesity). Based upon the foregoing, this allegation of error is without merit.

## *Treating Physician*

The plaintiff next argues that the ALJ failed to give adequate weight to the opinion of Dr. Gallman, her treating physician. The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 416.927(d)(2)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in Ruling 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. In many cases,

10

> a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

Dr. Gallman completed a report concerning the plaintiff's ability to work in April 2010. Dr. Gallman indicated that the plaintiff's pain and other symptoms caused severe work related limitations; for instance, she would miss more than four days of work per month, she would experience pain or other symptoms at such severity as to interfere constantly with attention and concentration needed to perform even simple work tasks, she could walk no more than one block without resting, and she could sit for only 30 minutes at a time and stand for only 30 minutes at a time. He further indicated that the plaintiff could stand/walk for a total of about two hours and sit for about four hours in an eight hour working day. Further, she could only occasionally lift and carry less than ten pounds (Tr. 377-78).

> The ALJ found as follows with regard to Dr. Gallman's opinion:
>
> I give little weight to Dr. Gallman's opinion. His treatment notes do not support the degree of limitation he indicates. On July 9, 2009, he found only slight mental limitations. On June 16, 2010, Dr. Gallman reported significant improvement in the claimant's pain upon terminating Lipitor. He further stated that the claimant's dyspnea on exertion is related to obesity and her sedentary lifestyle.
>
> Dr. Gallman's opinion indicating that the claimant's dyspnea on exertion is related to obesity and her sedentary lifestyle is consistent with the consulting physician's opinion that the claimant's obesity and inactivity contribute to her symptoms.

(Tr. 20 (citations to record omitted)).

This court finds that the ALJ properly gave little weight to Dr. Gallman's opinion as his own treatment notes did not support the severe limitations he assessed (*see* Tr. 381 (June 2010 treatment note in which the plaintiff reported significant improvement in pain)). Further, the ALJ gave great weight to the opinion of examining physician Dr.

11

Rowland (Tr. 17) who expressly found that the plaintiff did not meet the criteria for a diagnosis of fibromyalgia (Tr. 351). *See Richardson v. Perales*, 402 U.S. 389, 403-411 (1971). This court finds that the ALJ's decision to give little weight to Dr. Gallman's opinion is based upon substantial evidence.

*Credibility*

The plaintiff argues that the ALJ erred in his analysis of her credibility. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . .
> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

12

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

        (1)    the individual's daily activities;

        (2)    the location, duration, frequency, and intensity of the individual's pain or other symptoms;

        (3)    factors that precipitate and aggravate the symptoms;

        (4)    the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

        (5)    treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

        (6)    any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

        (7)    any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

The ALJ found that the plaintiff's subjective complaints were not fully credible (Tr. 19). The ALJ noted that there were discrepancies in the plaintiff's testimony regarding her functional ability. The plaintiff testified at the hearing that could not sweep or vacuum (Tr. 50). However, the ALJ noted that the plaintiff's written statements showed that she engaged in significantly more daily activities than she testified. In forms for the agency, the plaintiff indicated she could sweep, care for herself, prepare simple meals, wash dishes, and launder clothes (Tr. 191). She also indicated she could shop for groceries (Tr. 192-95), although later at the hearing she stated that her husband performed this task (Tr. 47). This was a proper reason to question the plaintiff's claims of disability. 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must consider whether there are conflicts between a

13

claimant's statements and the rest of the evidence). As argued by the Commissioner, even if it were possible to interpret this evidence differently, a reasonable person might find these statements inconsistent, and therefore the ALJ's findings on this point deserve deference. *See Craig*, 76 F.3d at 589 ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on ... the ALJ.") (internal quotation marks omitted).

The ALJ also found that there was a lack of objective evidence supporting the plaintiff's claims (Tr. 20). A lack of objective medical evidence may be used as one factor in a credibility analysis, so long as there are other valid reasons to question the plaintiff's credibility. In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565. However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p).

The court further acknowledged:

While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective

14

> evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id*. at 565 n.3 (quoting *Craig*, 76 F.3d at 595). *See* 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

The ALJ noted that a functional capacity evaluation performed in 2005 found that the plaintiff had the capacity for light to medium work (Tr. 275), and there was no documented evidence of worsening of the plaintiff's back condition since that time (Tr. 20). As the ALJ observed, physical examinations regarding the plaintiff's lower back pain were repeatedly benign, and the plaintiff showed good reflexes, strength, and range of motion (Tr. 20). Although there was tenderness observed in the plaintiff's neck, consultative examiner Dr. Rowland expressly found that the plaintiff did not meet the criteria for establishing fibromyalgia (Tr. 17, 20). It was reasonable for the ALJ to cite to these benign findings in questioning the plaintiff's claims of severe, debilitating pain.

The plaintiff also claims that the ALJ erred in evaluating her history of special education classes. Specifically, she argues that the ALJ erred in suggesting (Tr. 17) that her testimony at the hearing regarding participating in special education classes (Tr. 44) was inconsistent with earlier written reports, where she denied being in special education. The ALJ also noted that a ninth grade progress report had a handwritten note indicating

15

special education (Tr. 17; *see* Tr. 236). The plaintiff argues that the entire form was filled in by hand, and thus the ALJ's implication that, because it was handwritten, the form was not proof that the plaintiff attended special education classes was in error. However, the plaintiff fails to demonstrate any error on this point as the plaintiff did deny special education classes when meeting with agency staff at earlier stages in the disability application process (Tr. 147). It was, therefore, reasonable for the ALJ to cite this inconsistency in the record. Other evidence of record – including the opinion of Dr. Gallman that any mental limitations were "slight" (Tr. 334) – strongly supported the ALJ's finding of no severe mental impairment. As argued by the Commissioner, even if the ALJ erred in discussing this discrepancy, there was no harmful error, and his decision should be affirmed. *Mickles Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) ("would have reached the same result notwithstanding his initial error . . . ."). Based upon the foregoing, this allegation of error is without merit.

## **CONCLUSION AND RECOMMENDATION**

This court finds that the Commissioner's decision is supported by substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

                                                       s/ Kevin F. McDonald
                                                     United States Magistrate Judge

November 13, 2012
Greenville, South Carolina