**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Norma J. Childers, ) | C/A No. 6:11-3118-CMC-KFM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **OPINION & ORDER** |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). Plaintiff appealed pursuant to 42 U.S.C. § 405(g). The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Kevin F. McDonald, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, *et seq.*, D.S.C.

The Report, filed on November 13, 2012, recommends that the decision of the Commissioner be affirmed. Dkt. No. 13. Plaintiff filed objections to the Report arguing that "the ALJ erroneously gave little weight to Plaintiff's treating physician, instead giving controlling weight to a one-time evaluator." Dkt. No. 15. For reasons stated below, the court declines to adopt the analysis portion of the Report as to Plaintiff's treating physician, reverses the Commissioner's decision, and remands the matter to the Commissioner for further proceedings.

**STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court.

*Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

**DISCUSSION**

Plaintiff objects to the Report's finding that the ALJ's decision to give little weight to the treating physician, and to give controlling weight to a consulting physician, is supported by substantial evidence. Plaintiff's treating physician, Dr. Gallman, completed a report concerning Plaintiff's ability to work on April 30, 2010, opining that Plaintiff has chronic debilitating pain and listing fibromyalgia and depression as her diagnoses, as well as noting lower back pain.[1] Tr. 378. Dr. Gallman opined that Plaintiff would miss more than four days of work per month, would experience severe pain and other symptoms that would interfere with the concentration needed to perform simple tasks, and that she could sit and stand for only 30 minutes at a time. *Id.* Further, Dr. Gallman noted in that same opinion that Plaintiff's depression and psychological factors contribute to her work limitations.

---

[1] The court notes that this opinion was provided after the last date Plaintiff was insured for purposes of qualifying for Social Security benefits ("DLI"). As recently explained by the Fourth Circuit, "[m]edical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." *Bird v. Astrue*, 699 F.3d 337, 340 (4th Cir. 2012).

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). The ALJ must, however, explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion. Social Security Ruling (SSR) 96-2p; *see also* 20 C.F.R. § 416.927 (outlining factors an ALJ must consider when determining what weight to give a treating physician's opinion)[2]. "Even if legitimate reasons exist for rejecting or discounting certain evidence, the Secretary cannot do so for no reason or for the wrong reason." *Richardson v. Dir.*, *Office of Workers' Comp. Programs*, United States DOL, 94 F.3d 164, 168-69 (4th Cir. 1996) (quoting *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980)). The court must "judge the propriety of [an agency's] action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

The ALJ gave great weight to a consulting physician's opinion that Plaintiff does not have fibromyalgia. The ALJ stated that Plaintiff "has no evidence of trigger points and she does not have

---

[2] The factors include the length of the treatment relationship; the frequency of examinations; the nature and extent of the treatment relationship; support of the opinion afforded by medical evidence; consistency of the opinion with the record as a whole; and specialization of the treating physician. 20 C.F.R. § 416.927(c).

11 of 18 tender points required by the criteria established by the American College of Rheumatology to qualify for a diagnosis of fibromyalgia." The ALJ, therefore, rejected Dr. Gallman's opinion as to Plaintiff's fibromyalgia. Instead, the ALJ gave great weight to a one-time consulting physician, who noted Plaintiff's body pain since 2004, but was "unable to make a clinical diagnosis of fibromyalgia on physical examination because she does not meet the criteria on exam." As a result, the ALJ did not find fibromyalgia to be a severe impairment.

When determining Plaintiff's residual functional capacity ("RFC"), the ALJ also stated that she gave "little weight to Dr. Gallman's opinion." Tr. 20. The ALJ explained:

> On April 30, 2010, Dr. Gallman provided a residual functional capacity assessment showing significant limitation in the claimant's sitting, standing, walking, lifting, and carrying capacity, as well as postural limitations, that prevent her from performing even sedentary work on a regular basis. Dr. Gallman also provided an opinion that the claimant would experience pain or other symptoms at such severity to interfere constantly with attention and concentration needed to perform even simple work tasks. He further opined that the claimant would miss more work than four days a month as a result of her impairments or treatment (Exhibit 15F).
>
> I give little weight to Dr. Gallman's opinion. His treatment notes do not support the degree of limitation he indicates. On July 9, 2009, he found only slight mental limitations (Exhibit 10F, pg. 2). On June 16, 2010, Dr. Gallman reported significant improvement in the claimant's pain upon terminating Lipitor. He further stated that the claimant's dyspnea on exertion is related to obesity and her sedentary lifestyle (Exhibit 18F, pg. 1).
>
> Dr. Gallman's opinion indicating that the claimant's dyspnea on exertion is related to obesity and her sedentary lifestyle is consistent with the consulting physician's opinion that the claimant's obesity and inactivity contribute to her symptoms (Exhibit 11F).

Tr. 20.

The ALJ discounted Dr. Gallman's opinion as to Plaintiff's pain and its effect on her ability to work because "[h]is treatment notes do not support the degree of limitation he indicates." The

4

ALJ cited to Dr. Gallman's treatment notes from June 16, 2010, in which he "reported significant improvement in the claimant's pain upon terminating Lipitor." Although Dr. Gallman reported that she had significant improvement in pain after terminating Lipitor, Dr. Gallman also noted that she continued to take Cymbalta "for the depression and the fibromyalgia." Tr. 381. In fact, on April 30, 2010, Dr. Gallman increased Plaintiff's prescription for "Cymbalta to a 30 mg 3 tablets a daily [*sic*]." Tr. 382. Dr. Gallman's treatment notes dated, *inter alia*, June 18, 2009, October 26, 2009, January 11, 2010, and April 30, 2010 contain Plaintiff's pain complaints and treatment of that pain.[3]

The ALJ also cited to Dr. Gallman's assessment on July 9, 2009, in which "he found only slight mental limitations." However, that assessment was based on Plaintiff's mental condition only. Tr. 334 (answering questions such as "Does the patient exhibit any work-related limitation in function due to the **mental** condition?") (emphasis in original). Dr. Gallman's April 30, 2010, opinion was that Plaintiff would "constantly" experience "pain and other symptoms severe enough to interfere with attention and concentration need to perform even simple work tasks." Tr. 377. Even if the ALJ did not find that Plaintiff's depression and panic attacks limit her ability to work, that is not a basis to reject Dr. Gallman's opinion that Plaintiff is unable to work because of her "chronic debilitating pain."

Finally, the ALJ discounted Dr. Gallman's opinion of work limitations because his treatment notes stated that Plaintiff's "dyspnea on exertion is related to obesity and her sedentary lifestyle."

---

[3] The Magistrate Judge noted that "[i]n June 2009, the plaintiff returned to Dr. Gallman complaining of worsened pain her right arm. The doctor noted that the plaintiff had not been seen in a year." Dkt. No. 13 at 5. This statement suggests that the ALJ offered this as one reason for not accepting Plaintiff's subjective complaints of pain. However, the ALJ did not mention this in her decision. Further, Plaintiff was being seen by the Good Sheperd Free Medical Clinic for pain and other medical issues when she was not being seen by Dr. Gallman.

5

However, Dr. Gallman's opinion that her dyspnea (shortness of breath) was related to obesity and her sedentary lifestyle is not inconsistent with his opinion that Plaintiff's pain is debilitating. The ALJ also states that Dr. Gallman's opinion concerning Plaintiff's dyspnea is "consistent with the consulting physician's opinion that the claimant's obesity and inactivity contribute to her symptoms." First, the consulting physician neither opined as to the cause of Plaintiff's dyspnea nor that Plaintiff's *obesity* and inactivity contribute to her symptoms. Rather, the consulting physician noted that Plaintiff "says she has a lot of pain and that is related in part to *depression* and inactivity." Tr. 351. Second, the court does not interpret this statement to mean that Plaintiff's depression and inactivity *cause* her pain, but that they are related. One reasonable interpretation of this statement is Plaintiff is depressed and inactive because of her pain.

After reviewing the entire record, the court cannot say that the ALJ's decision is supported by substantial evidence. Although there may be legitimate reasons to discount Dr. Gallman's opinion, *see Richardson,* 94 F.3d at 168-69, the reasons cited by the ALJ for giving little weight to Dr. Gallman's opinion do not assure this court that the ALJ considered all of Dr. Gallman's treatment notes and opinions as to Plaintiff's pain. The court, therefore, reverses the Commissioner's decision and remands this matter for consideration of all of Dr. Gallman's treatment notes and opinions, as required by Social Security Ruling 96-2p.

In her opening brief to the Magistrate Judge, Plaintiff also argued that the ALJ failed to properly consider her obesity and erred in analyzing her credibility. Plaintiff did not object to the Report's finding that the ALJ properly considered her obesity. Having reviewed the Report, the court agrees that the ALJ did not err in considering Plaintiff's obesity. Plaintiff also did not object to the Report's finding that the ALJ properly analyzed her credibility and that to the extent the ALJ

6

erred, it was harmless error.[4] However, on remand, the ALJ shall analyze Plaintiff's credibility in light of consideration of all of Dr. Gallman's treatment notes and opinions.

## CONCLUSION

For reasons set forth above, the court declines to adopt the Report and Recommendation of the Magistrate Judge in full, specifically as to the ALJ's consideration of the treating physician's opinion. The court reverses the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), and remands the case to the Commissioner for further proceedings consistent with this order.

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 15, 2013

---

[4] The ALJ appears to reject Plaintiff's testimony that she was in special education classes in school based on (1) Plaintiff's prior denial of special education classes when meeting with agency staff and (2) the fact that the only notation of special education in her school records was handwritten. As explained in the Report, her 1970-71 school records were forms that were completed by hand, and the handwritten notation of special education alone was not enough to disbelieve her testimony that she attended special education classes. However, the Report explained that Plaintiff failed to explain why she previously denied special education to the agency staff and that other evidence supported that her mental limitations were slight. Dkt. No. 13. The Report, therefore, concluded that, to the extent the ALJ erred, that error was harmless.